UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X     08-CV-3166 (NG)
NADIA JOSIE-DELERME,

               Plaintiff,

    -against-                                                                                                    OPINION AND ORDER

AMERICAN GENERAL FINANCE CORP.,
FRANCO GALIA, and RICK KROMPINGER                                        FILED
                                                                                               IN CLERK'S OFFICE
               Defendant.                                              U.S. DISTRICT COURT E.D.N.Y.
---------------------------------------------------------------X         ★   JUL 3 1 2009   ★

GERSHON, United States District Judge:                                   BROOKLYN OFFICE

       On August 4, 2008, Plaintiff Nadia Josie-Delorme instituted this action against defendants American General Finance Corporation ("AGF"), and two AGF employees, Franco Galia and Rick Krompinger, alleging violations of unspecified sections of the Family and Medical Leave Act of 1993, Pub. L. No. 103-3, 107 Stat. 6 (codified in scattered sections of 5 and 29 U.S.C.) ("FMLA"); Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"); and the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k) ("PDA"), claiming that defendants discriminatorily terminated her employment at AGF. Plaintiff also brings claims under New York law for mental and emotional distress, negligent infliction of emotional distress, defamation, and breach of contract.

       Defendants seek to dismiss the complaint, or, in the alternative, to stay the instant action and compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.* Defendants also seek sanctions against plaintiff in the form of attorney fees and costs pursuant to 28 U.S.C. § 1927. Because I find that the parties are bound by AGF's Employee Dispute Resolution program ("EDR," "the plan," or "the program") and by the arbitration agreement

contained in it, I now grant defendants' motion and dismiss this action. Defendants' request for fees and costs is denied.

I.  **Facts as to the Arbitration Agreement[1]**

AGF is a financial services company with branches throughout the United States, including in New York City. Since 1999, AGF has had in effect its EDR program, which requires arbitration of all employment-related claims by prospective, current, or former employees if those claims cannot be resolved through the first three steps of AGF's four-step complaint resolution process. It does not require waiver of any legal claims, and employees may seek the same remedies in arbitration as they could in court, including compensatory and punitive damages and attorney fees. The plan covers all claims of employment discrimination. Consenting to the EDR is a condition of employment at AGF. Prospective employees are required to sign a statement of understanding that they will be bound by the EDR both when they submit an employment application and again on the date of hire.

At orientation on an AGF employee's date of hire, AGF provides new employees with electronic access to the EDR policies and requires them to sign a form acknowledging receipt of the EDR guidelines and agreeing to comply with the EDR and several other company policies. The form makes specific reference to the EDR, although the form itself does not provide details about the plan. At orientation, employees are informed that all EDR materials are available upon written request or viewable at any time on AGF's corporate intranet.

Plaintiff applied for a position at AGF on December 22, 2005. As part of the application process, plaintiff signed the Authorizations and Understandings form, which includes a paragraph regarding the EDR. On February 20, 2006, defendant AGF hired plaintiff as a

---

[1] Defendants have filed with their motion an affidavit and numerous exhibits setting forth the details of the arbitration agreement. Plaintiff has raised no factual issues as to these submissions.

2

Customer Account Specialist in AGF's Brooklyn, New York office, whereupon plaintiff signed an acknowledgment form affirming that she had received the EDR and that she agreed to abide by it. Plaintiff does not contest that she signed the two forms.

## II. Discussion

### A. Arbitration Agreement Validity and Scope

The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA was intended to "revers[e] centuries of judicial hostility to arbitration agreements." *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 844 (2d Cir. 1986) (internal quotation omitted). The Supreme Court has instructed that the language of this section evinces "a congressional declaration of a liberal federal policy favoring arbitration agreements...." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). However, arbitration is a "matter of contract law and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *AT&T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (internal citation omitted). Therefore, it is the responsibility of the courts to decide whether the parties did in fact agree to arbitrate, unless there is "clear and unmistakable evidence" that parties have agreed to have an arbitrator decide the question of arbitrability. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). If a court finds that the parties have entered into a valid arbitration agreement, the court has no discretion and must "direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

3

After review of AGF's EDR plan, I find that there is not "clear and unmistakable evidence" that the parties agreed to arbitrate the question of whether they entered a valid arbitration agreement. The plan nowhere states that the question of its applicability will be decided by an arbitrator. This silence on the question of who decides arbitrability is determinative, since "the law treats silence or ambiguity about the question '*who* (primarily) should decide arbitrability' differently from the way it treats silence or ambiguity about the question '*whether* a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement." *First Options*, 514 U.S. at 945. In the context of a merits-related dispute, there is a presumption in favor of arbitration. However, with regard to arbitrability, the presumption is reversed. *Id.* As the Supreme Court has explained, this is so because the question of who should decide arbitrability is "rather arcane. A party often might not focus upon that question or upon the significance of having arbitrators decide the scope of their own powers." *Id.* Thus, where, as here, there is no explicit agreement regarding arbitrability, the court will presume that there was no agreement to arbitrate the question of arbitrability, and will consider the validity and applicability of the arbitration agreement between Josie-Delerme and AGF.

When deciding requests to compel arbitration pursuant to the FAA, a court must resolve "questions of contractual validity ... as a matter of state law." *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 365 (2d Cir. 2003). This inquiry includes consideration of relevant state law defenses to contract formation, including "fraud, duress, or unconscionability, [which] may be applied to invalidate arbitration agreements without contravening [the FAA]." *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). The initial inquiry, then, is which state's law applies. Here, there can be no doubt that New York law controls. The EDR

4

plan contains no choice of law provision. Plaintiff is a resident of New York and signed the contracts at issue in New York, where AGF maintains an office. Neither party argues that the law of another state would be more appropriate. Therefore, this court will apply New York law to determine two issues: "(1) Did the parties enter into a contractually valid arbitration agreement? and (2) If so, does the parties' dispute fall within the scope of the arbitration agreement?" *Cap Gemini*, 346 F.3d at 365.

With regard to the first issue, I find that the arbitration agreement is a valid contract under New York law. Plaintiff challenges the arbitration clause on two grounds: first, because plaintiff had already been hired when she signed the agreement at her new employee orientation, it was not a bargained-for exchange; and second, because AGF did not provide plaintiff with a complete hard copy of the EDR plan at the time she signed the agreement, there was no meeting of the minds as required to form a contract.

Plaintiff's argument as to lack of consideration is meritless, as "the continuation of employment alone is sufficient consideration to enforce [a post-employment arbitration] agreement." *Stern v. Espeed, Inc.*, No. 06-958, 2006 WL 2741635, at *2 (S.D.N.Y. Sept. 22, 2006); *see also Kaplan v. Aspen Knolls Corp.*, 290 F. Supp. 2d. 335, 338 (E.D.N.Y. 2003).

Plaintiff's argument that the arbitration agreement is invalid because there was no meeting of the minds does not fare better. Plaintiff's counsel argues that plaintiff had "no idea that the company defined 'employee' to mean present employees and those no longer working for the company." Under New York law, "a person who signs a contract is presumed to know its contents and assent to them." *Mildworm v. Ashcroft*, 200 F. Supp. 2d 171, 177 (E.D.N.Y. 2002) (internal quotation omitted). That plaintiff may have misunderstood the meaning of the term "employee" as used in the EDR plan is no defense to formation where, as here, defendants

clearly state in the EDR materials that the plan covers "all employment disputes," including those concerning "termination." *See Aventine Inv. Mgmt. v. Canadian Imperial Bank of Commerce*, 265 A.D.2d 513, 514 (2d Dep't 1999) (unilateral misunderstanding of a "plain and unambiguous" contract does not allow a party to avoid obligations under that contract).

In addition, plaintiff had easy access to the documentation detailing which people and which claims are covered by the EDR. She signed two forms, both of which highlighted the existence of the EDR, and both of which entreated her to review the policy in full and offered to provide a paper copy upon request. These agreements "could not have done more to put [plaintiff] on notice that [she] was agreeing to submit any and all [employment-related claims] to arbitration." *Maye v. Smith Barney Inc.*, 897 F. Supp. 100, 107 (S.D.N.Y. 1995) (compelling arbitration where the employer did not expressly draw employees' attention to the arbitration clause but where the arbitration policy was apparent in the materials provided to employees). Because plaintiff's arguments regarding contract formation are without merit, the court finds that the agreement is valid.

The second issue is whether "the parties' dispute fall[s] within the scope of [that] arbitration agreement." *Cap Gemini*, 346 F.3d at 365. Given the breadth of the agreement, plaintiff's claims clearly fall within the EDR plan's scope. The EDR Program guide, which explains the plan in terms generally accessible to laypeople, states that the plan:

> appl[ies] only to disputes involving legally protected rights.... [L]egally protected rights means any claim or dispute that a court (judge or jury) would otherwise decide. This includes any claims, demands, or actions for discrimination, retaliation or harassment on the basis of age, sex, race, color, national origin, religion, disability, pregnancy, veteran's status, or any other status protected by federal, state, and local regulations, ordinances, or statutes. Legally protected rights are also those brought under common law theories like wrongful discharge, breach of contract, breach of covenant of good faith and fair dealing,

6

fraud, defamation, violation of public policy, unfair competition, claims related to trade secret rights or any other cause of action relating to employment or termination of employment.[2]

Plaintiff's discrimination claims fall squarely within the scope of this broad arbitration agreement, as do her common law claims for infliction of emotional distress, defamation, and breach of contract. The agreement plainly states that it covers claims of discrimination and the common law claims of breach of contract and defamation. While the agreement does not explicitly mention actions for infliction of emotional distress, it is apparent that the list of common law claims given as examples is illustrative, not exhaustive.[3]

Finally, where federal statutory claims are asserted, the court must determine "whether Congress intended those claims to be nonarbitrable." *Genesco*, 815 F.2d at 844. Generally, "although all statutory claims may not be appropriate for arbitration, having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude waiver of judicial remedies for the statutory rights at issue." *14 Penn Plaza LLC v. Pyett*, --- U.S. ----, 129 S.Ct. 1456, 1465 (2009); *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) (recognizing that "by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by statute; it only submits their resolution in an arbitral, rather than a judicial, forum.") (internal quotation and citation omitted). With regard to the

---

[2] An alternative, more complex version of the EDR plan's scope states that the plan covers, "all claims or disputes arising out of the interpretation or enforcement of any duties, rights, or obligations of the parties set forth in any employment agreement or under an express or implied contract theory...."

[3] Even if the scope of the arbitration agreement did not explicitly include plaintiff's claims, the agreement's language is broad enough to warrant a "presumption of arbitrability." *Oldroyd v. Elmira Savings Bank*, 134 F.3d 72, 76 (2d Cir. 1998); *see also Boey Chau v. West Carver Med. Associates, P.C.*, No. 06-0526, 2006 WL 3780546 (E.D.N.Y. 2006); *Tong v. S.A.C. Capital Mgmt.*, 52 A.D.3d 386, 386 (1st Dep't 2008) ("Even if the arbitration provision were ... ambiguous in scope, since its construction is governed by the Federal Arbitration Act, any such ambiguities would be properly resolved in favor of arbitration.").

claims raised in plaintiff's complaint, "[i]t is well-established that Title VII claims are arbitrable." *E.E.O.C. v. Rappaport, Hertz, Cherson & Rosenthal, P.C.*, 448 F. Supp. 2d 458, 462 (E.D.N.Y. 2006); *see* Pub. L. No. 102-166, § 118, 105 Stat. 1071 (1991) (codified as part of the Civil Rights Act of 1991 as a note to 42 U.S.C. § 1981) ("[W]here appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including ... arbitration, is encouraged to resolve disputes arising under the Acts or provisions of Federal law amended by this title ...."); *see also Maye*, 897 F. Supp. at 109 (collecting Second Circuit cases affirming that Title VII claims are arbitrable). This rule similarly applies to plaintiff's claims pursuant to the Pregnancy Discrimination Act, which is part of Title VII; the FMLA, *see Rogers v. New York Univ.*, 220 F.3d 73 (2d Cir. 2000), *abrogated on other grounds by 14 Penn Plaza*, 129 S.Ct. 1456; and New York common law. *See, e.g., Tong v. S.A.C. Capital Mgmt.*, 52 A.D.3d 386, 386 (1st Dep't 2008) (upholding lower court's decision to compel arbitration of discrimination claims brought under state statutory and common law, including claims for defamation and intentional torts).

## B. Sanctions

Defendants claim that plaintiff initiated these proceedings in bad faith, and seek an award for costs and attorney's fees pursuant to 28 U.S.C. § 1927. According to defendants, defense counsel, through conversations with plaintiff's counsel after the filing of the instant case, sought to enforce the arbitration agreement contained in AGF's EDR. Plaintiff refused to withdraw her complaint. While the court agrees that plaintiff's claims regarding the validity and applicability of the EDR plan are without merit, and that her response to defendants' motion was cursory, the standard for sanctions under 28 U.S.C. § 1927 has not been met.

## III. Conclusion

In light of the above, defendants' motion to dismiss this action and compel arbitration is GRANTED. Defendants' request for sanctions in the form of costs and attorneys' fees is DENIED.

**SO ORDERED.**

s/Nina Gershon

**NINA GERSHON**
**United States District Judge**

**Dated:** July 29, 2009
Brooklyn, New York